Joseph E. CORCORAN, Defendant–
Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 02S00–9805–DP–293.

Supreme Court of Indiana.

Dec. 6, 2000.

P. Stephen Miller, Fort Wayne, Indiana, John C. Bohdan, Glasser and Ebbs, Fort Wayne, Indiana, for appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, Indiana, for appellee.

DICKSON, Justice.

A jury found the defendant, Joseph E. Corcoran, guilty of four counts of murder.[1] In the subsequent penalty phase, the jury recommended the death penalty, and the trial court ordered the death sentence imposed. Appealing from the trial court judgment, the defendant does not challenge the guilt phase proceedings or his resulting convictions. His appellate claims concern only the penalty and sentencing proceedings and his death sentence.[2] The defendant's appeal presents eight claims, which we rearrange as follows: (1) the Indiana death penalty statute violates the United States Constitution because a death sentence and a sentence of life without parole (LWOP) are governed by the same eligibility requirements; (2) the death penalty/LWOP statute is ambiguous and therefore must be construed against the state; (3) the selection phase of the death penalty/LWOP statute violates the federal and state constitutions as it permits the arbitrary imposition of the death penalty; (4) the death penalty/LWOP statute violates the Indiana Constitution's proportionality provision; (5) the death penalty/LWOP statute violates defendant's right to a jury trial because it allows the State to penalize its exercise; (6) the prosecutor committed misconduct in the closing argument during the penalty phase; (7) the judge improperly considered a non-statutory aggravator when sentencing; and (8) the death sentence in this case is manifestly unreasonable.

### Constitutionality of the Death Penalty / Life Imprisonment Statute

In the first four claims enumerated above, the defendant contends that the Indiana capital sentencing statute facially violates the federal and Indiana constitutions because it permits the sentencer to impose a sentence of death or life impris-

---

1. IND.CODE § 35–42–1–1.

2. The defendant, by counsel and personal affidavit, filed a written waiver of his right to appeal his convictions but retained the right to appeal his sentence.

onment without parole based on the same aggravating circumstances.

First, the defendant contends that the eligibility provision of the Indiana sentencing system for the crime of murder violates the Eighth Amendment to the Constitution of the United States, "because the Indiana legislature has not deemed any murder such an affront to society that the only appropriate penalty may be death." Brief of Appellant at 22. He argues that, because those persons eligible for the death penalty are also eligible for a sentence of life imprisonment without parole, the Indiana death penalty "constitutes nothing more than purposeless and needless imposition of pain and suffering." *Id.* at 37.

Second, the defendant contends that in the absence of mitigating circumstances, there is no basis under the Indiana system to decide between life imprisonment and the death penalty. He argues that this constitutes an ambiguity that must be strictly construed against the State.[3]

Third, the defendant contends that the Indiana statute materially misguides the sentencer in the selection phase because it permits the sentencer to choose life imprisonment without parole because of retribution if the sentencer believes that death would be a more merciful sentence. He argues that this results in a potential for substantial unreliability and bias in favor of death sentences.

We address these claims together because we conclude that they are governed by the same principles. Indiana statutes prescribe that the penalty for the crime of murder may be either (a) a determinate term of imprisonment for forty-five to sixty-five years, (b) life imprisonment without parole, or (c) a death sentence.

To be eligible for possible imposition of the death penalty or life imprisonment without parole, an offender must have committed a murder accompanied by at least one of several prescribed aggravating circumstances. IND.CODE § 35–50–2–9(b). Under the Indiana statutory scheme, the aggravating circumstances that make an offender eligible for the death penalty are the same that define eligibility for life without parole. If the State seeks the death penalty or life without parole, upon finding one of the prescribed aggravating circumstances proven beyond a reasonable doubt and finding mitigating circumstances outweighed by the aggravating circumstance(s), the trial court, after considering the recommendation of the jury, may impose a sentence of death or life imprisonment without parole.

The defendant contends that Indiana's death penalty statute is unconstitutional because it fails to delineate between those crimes for which the death penalty is proportional and all other murders and thus fails to reserve the death penalty for the most severe class of crimes. Citing *Arave v. Creech,* 507 U.S. 463, 474, 113 S.Ct. 1534, 1542, 123 L.Ed.2d 188, 200 (1993), he argues that this violates a requirement that a capital sentencing statutory scheme must provide a principled basis for differentiating those persons for whom the death penalty is appropriate from those for whom it is not.

In *Arave,* however, the issue was not whether the class of murderers eligible for the death penalty might alternatively be sentenced to imprisonment. The United States Supreme Court instead addressed whether an Idaho statutory aggravating circumstance that "the defendant exhibited

---

**3.** As part of this argument, the defendant also claims that the Indiana statute impairs his right to present evidence of mitigating circumstances because, by choosing to present mitigation evidence, a capital defendant runs the risk that the sentencer "may decide that the mitigating circumstances are insufficient," thus "lowering his $^{5}\!/\!_{00}$ opportunity with only the aggravating circumstances." Brief of Appellant at 38. He argues that, by presenting mitigation, a defendant may provide "a rational basis to decide between LWOP and the death penalty," thus potentially increasing instead of limiting the possibility of a death sentence. Reply Brief of Appellant at 10. We find this argument unpersuasive.

an utter disregard for human life" adequately channeled sentencing discretion for imposition of a death sentence. 507 U.S. at 465, 113 S.Ct. at 1538, 123 L.Ed.2d at 194. The Court reasserted as a "fundamental principle" that:

> to satisfy the Eighth and Fourteenth Amendments, a capital sentencing scheme must suitably direct and limit the sentencer's discretion so as to minimize the risk of wholly arbitrary and capricious action. The State must channel the sentencer's discretion by clear and objective standards that provide specific and detailed guidance, and make rationally reviewable the process for imposing a sentence of death.

*Id.* at ·470–71, 113 S.Ct. at 1540, 123 L.Ed.2d at 197–98 (internal quotation marks and citations omitted).

■ The Indiana capital sentencing scheme satisfies this requirement by prescribing particular aggravating circumstances that narrow the class of murderers eligible for the death penalty. *Judy v. State*, 275 Ind. 145, 416 N.E.2d 95, 105–08 (1981). We recognize that the Indiana capital sentencing statute "must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.'" *Wrinkles v. State*, 690 N.E.2d 1156, 1165 (Ind.1997) (quoting *Zant v. Stephens*, 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235, 249–50 (1983)). Even with the addition of life without parole as an alternative punishment for death-eligible murderers, however, the Indiana system "rationally distinguishes between those individuals for whom death is an appropriate sanction and those for whom it is not." *Stevens v. State*, 691 N.E.2d 412, 429 (Ind.1997) (quoting *Spaziano v. Florida*, 468 U.S. 447, 460, 104 S.Ct. 3154, 3162, 82 L.Ed.2d 340, 352 (1984)). Just as there is no constitutional defect under the Indiana death penalty statute, which gives the Indiana sentencer discretion to choose between death and imprisonment for a term of years, so also there is no defect in permitting the sentencer to choose the alternative of life imprisonment without parole. *Wrinkles*, 690 N.E.2d at 1165.

■ We conclude the Eighth Amendment is not violated by the Indiana statute's inclusion of life imprisonment without parole as a sentencing alternative using the same aggravating factors as a death sentence.

In the fourth claim of facial unconstitutionality based on the inclusion of the life imprisonment alternative with the death penalty, the defendant contends that the statute violates Article I, Section 16 of the Indiana Constitution, which provides in relevant part: "All penalties shall be proportioned to the nature of the offense." He argues that, because the statute does not identify whether death or life imprisonment is the more severe punishment, it is impossible to assure that the penalty imposed is proportional to the crime committed. Because death or life imprisonment are each grave and extreme punishments and are reserved for only the most extreme murders, in contrast to sentences for a discrete term of years in all other murders, the proportionality provision of the Indiana Constitution is not offended by their equivalent availability under the statute.[4]

---

4. In this section of his argument, the defendant also includes the claim that the statute · violates Article I, Section 18, of the Indiana Constitution, which provides: "The penal code shall be founded on the principles of reformation, and not vindictive justice." He argues that, by declaring that every murderer eligible for the death penalty may receive life imprisonment, the legislature has established that reformation is the appropriate penal remedy and that the death penalty, based on vindictive justice, should not be permitted. This argument would require that, even without the equivalent availability of life without parole, the death penalty procedure would be unconstitutional because a sentencer would still have the option of imposing death or a term of years. *See Wrinkles*, 690 N.E.2d at

### Impingement on Right to Jury Trial

■ The defendant contends that Indiana's death penalty scheme impermissibly infringes, facially and as applied, upon the right to jury trial. He argues that, because identical factors may support a prosecutor's decision to seek either death or life imprisonment, the statute enables prosecutors to seek the death penalty "to coerce an individual who refuses to plead guilty to relinquish a constitutional right" to jury trial. Brief of Appellant at 46. The defendant asserts that in his case he declined the State's offer to accept a guilty plea or try his case to the bench and thereby avoid the death penalty. He urges that because the prosecutor thus believed that life imprisonment was the appropriate penalty, the request for the death penalty had no basis except to provide "a strategic advantage ... to force the defendant to abdicate a basic right." *Id.* at 47.

■ We disagree. Prosecutors are traditionally given wide discretionary power in our criminal justice system to select the persons to be prosecuted and to plea-bargain with them. The Supreme Court has recognized the benefits of efficiency and speedy dispositions that plea-bargaining offers, and has fully approved its use as long as it is accompanied by safeguards that insure full knowledge on the part of the defendant offering a guilty plea as to his rights, his consequent waiver of those rights, the crime to which he is pleading guilty, and the maximum penalty or the extent to which he places himself at risk. *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). In the context of plea-bargaining, we do not see a material distinction in the discretionary powers of the prosecutor in offering to agree to a lesser sentence for a guilty plea or for a bench trial. Our case law, which proscribes the imposition of a harsher sentence because a defendant exercised his right to jury trial, is rightly focused on the actions of the judge as sentencer and not the prosecutor as charger. *See Hill v. State,* 499 N.E.2d 1103, 1107 (Ind.1986) ("Whether the severity of a particular sentence was improperly influenced by a defendant's jury trial election requires an individualized consideration." *Id.* Factors to be considered are (1) the role the judge played in the plea negotiations; (2) whether the judge encouraged the defendant to plead guilty; (3) the presence of threats from the judge of a more severe sentence if convicted following a jury trial; and (4) any evidence that the trial judge penalized the defendant for going to trial. *Pauley v. State,* 668 N.E.2d 1212, 1213 (Ind.1996); *Hill,* 499 N.E.2d at 1107 (Ind.1986)).

■ The defendant did not waive his right to jury trial and fails to point to anything in the record that indicates he received a more severe sentence from the court because he exercised his right to jury trial. Absent a specific showing that a particular sentence was improperly influenced by the defendant's exercise of his right to jury trial, which is not presented here, we decline to reverse.

### Prosecutorial Misconduct

The defendant contends that his death sentence should be reversed because some of the prosecutor's remarks during closing arguments in the penalty phase constituted prosecutorial misconduct. The defendant urges that the prosecutor's rhetoric was excessively inflammatory and that it concentrated on aggravating circumstances not authorized by the Indiana

1165. This Court has clearly held this Indiana capital sentencing procedure does not violate Section 18. *Saylor v. State,* 686 N.E.2d 80, 88 (Ind.1997); *Harrison v. State,* 644 N.E.2d 1243, 1258 (Ind.1995) (citing *Fleenor v. State,* 514 N.E.2d 80, 90 (Ind.1987), *reh'g. denied, cert. denied,* 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158 (1988); *Driskill v. State,* 7 Ind. 338, 342, (1855); *Rice v. State,* 7 Ind. 332, 338 (1855)), *aff'd after remand,* 659 N.E.2d 480 (Ind.1995), *reh'g denied, cert. denied,* 519 U.S. 933, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996); *Lowery v. State,* 478 N.E.2d 1214, 1220 (Ind.1985); *Smith v. State,* 465 N.E.2d 1105, 1113 (Ind.1984). We decline to hold to the contrary.

death penalty statute. The defendant did not object at trial.

■ Appellate recourse is not available for the review of alleged trial misconduct when the complaining party failed to timely object at trial. *Stevens v. State*, 691 N.E.2d 412, 420 (Ind.1997). The defendant argues that the misconduct constituted "fundamental error," a doctrine under which an appellate claim may be considered notwithstanding the failure of contemporaneous trial objection. For this exception to apply, however, we must find that the alleged misconduct so prejudiced the defendant's rights as to make a fair trial impossible. *Id.*

■ Not unlike *Stevens,* the penalty phase jury instructions here emphasized that, in order to recommend a sentence of death or life without parole, the jury must first unanimously conclude that the State proved beyond a reasonable doubt the existence of the charged aggravating circumstance (that the defendant committed another murder), that this aggravating circumstance was not outweighed by any mitigating circumstances, and that only evidence "which bears directly upon the mitigating factors, or the aggravating factor" could be considered. Record at 2462–65, 2468–69, 2472. We conclude that the defendant's allegations of prosecutorial misconduct in final argument do not show improper prejudice to the defendant's rights thereby making a fair trial impossible. This claim does not qualify for the "fundamental error" exception, and it was forfeited by procedural default.

### Consideration of Non-statutory Aggravator

The defendant contends that the trial court's imposition of a death sentence violated the Eighth and Fourteenth amendments of the United States Constitution and Article 1, Section 16 of the Indiana Constitution because the trial court considered future dangerousness of the defendant, a circumstance not among the statutory aggravating circumstances authorized by the Indiana death penalty statute.

■ In deciding whether to order a death sentence, a court must limit its consideration of aggravating circumstances to those specified in the death penalty statute. IND.CODE § 35–50–2–9(b); *Bivins v. State*, 642 N.E.2d 928, 955 (Ind.1994). Indiana Code Section 35–38–1–3(3) requires that if the trial court finds aggravating or mitigating circumstances, its record must include "a statement of the court's reasons for selecting the sentence that it imposes." The statement of reasons should contain three elements: a) identification of all significant mitigating and aggravating circumstances found, b) specific facts and reasons which lead the court to find the existence of each such circumstance, and c) articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determination of the sentence. *Hill v. State*, 499 N.E.2d 1103, 1107 (Ind. 1986); *Hammons v. State*, 493 N.E.2d 1250, 1254 (Ind.1986); *Jones v. State*, 467 N.E.2d 681, 683 (Ind.1984).

■ The requirement for sentencing findings are more stringent in capital cases than in non-capital sentencing situations, and the statement must also set forth the trial court's personal conclusion that the sentence is appropriate punishment for this offender and this crime. *Harrison v. State*, 644 N.E.2d 1243, 1262 (Ind.1995). "We require such specificity in a sentencing order or statement of reasons for imposing a sentence to insure the trial court considered only proper matters when imposing sentence, thus safeguarding against the imposition of sentences which are arbitrary or capricious, and to enable the appellate court to determine the reasonableness of the sentence imposed." *Id.; Daniels v. State*, 561 N.E.2d 487, 491 (Ind.1990); *see also Schiro v. State*, 451 N.E.2d 1047, 1053 (Ind.1983) (finding that a written sentencing statement "guard[s] against the influence of improper factors at the trial level and

[makes] sure that the evils of *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), 'arbitrary and capricious application' of the death penalty, were not present in the sentencing decision"). It is usual practice for a trial judge to comment when the sentence is announced in open court. When a trial judge's oral comments refer to factors not included in the court's separate written findings, the issue may arise as to whether such remarks demonstrate impermissible use of a nonstatutory aggravating factor. *Bellmore v. State*, 602 N.E.2d 111, 129 (Ind.1992).

■ In this case, in which the defendant had been found guilty on each of four counts of murder, the judge in her written sentencing order found that, as to State's application for the death sentence on each count of murder, the State proved beyond a reasonable doubt that the defendant committed another murder.[5] The court's sentencing statement reflects that the trial judge thoughtfully considered the nine mitigating circumstances asserted by the defendant and concluded that the following were shown: the defendant was under the influence of a mental or emotional disturbance at the time the murders were committed; the defendant cooperated fully with investigating authorities, reducing the potential for additional harm and furthering the State's case against himself; the defendant lacked a significant criminal history; and the defendant indicated remorse. The trial court articulated its evaluation that each of the mitigating circumstances was of medium or low weight. It concluded:

> Pursuant to I.C. 35–50–2–9(k) the Court has balanced the aggravating circumstances proved by the State against the mitigating circumstances proved by the Defendant. The Court finds that the knowing and intentional murders of

four (4) innocent victims to be particularly heinous crimes. [sic] The Court weighs this aggravating circumstance very high. The Court, having evaluated and balanced these circumstances finds that the aggravating circumstances outweigh the mitigating circumstances. The Court again finds that the mental or emotional disturbance suffered by the Defendant did not affect his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

> The Court, having considered the jury's recommendation that the death penalty be imposed now finds that such a sentence is supported by the facts and the evidence, and the character of the Defendant, and therefore orders that the Defendant be executed pursuant to Indiana law....

Record at 2577–78.

In her oral remarks in open court at the time of sentencing, the trial judge stated in part:

> Pursuant to the law, Indiana Code 35–50–2–9(k), I'm required to balance aggravating circumstances proved by the State of Indiana against mitigating circumstances proved by the Defense. That has been a very difficult process, and not a process that I have ever taken lightly, and certainly would never take lightly, Mr. Corcoran. Your emotional and mental disturbance is of concern to this Court. Also of concern to this Court is that none of the experts can seem to give me a straight answer, Mr. Corcoran, of what is really going on inside your head. And maybe it is as [the prosecutor] argued in his closing, that society just cannot begin to comprehend why you would do what you did, so we've got to say, there's got to be something wrong with this guy to have done

---

**5.** One of the aggravating circumstances enumerated in the death penalty statute is: "The defendant has committed another murder, at any time, regardless of whether the defendant has been convicted of that murder." IND.

CODE § 35–50–2–9(b)(8). This subsection is only available in cases involving double or multiple murders for which the defendant is being tried in one proceeding. *Williams v. State*, 669 N.E.2d 1372, 1389 (Ind.1996).

what he did. I'm not going to say that, Mr. Corcoran, because I don't know. I do know, however, that the knowing and intentional murders of four innocent people is an extremely heinous and aggravated crime. That makes you, Mr. Corcoran, a mass murderer. [The prosecutor] is right. I don't think in the history of this county we've had a mass murderer such as yourself. It makes you, Mr. Corcoran, a very dangerous, evil mass murderer. And I am convinced in my heart of hearts, Mr. Corcoran, if given the opportunity, you will murder again.

*Id.* at 2915–16. After this passage, the judge goes on to weigh the aggravator and the mitigators. The defendant argues that the above passage demonstrates that, in making her determination, the judge considered future dangerousness, which is not one of the enumerated aggravating circumstances permitted under the Indiana death penalty statute.

In addition to the Court's oral remarks regarding future dangerousness, we also observe that the sentencing statement itself suggests that, in balancing aggravating and mitigating circumstances, the trial court may have also considered that there were "four innocent victims" and that the crimes were "particularly heinous," neither of which are among the prescribed statutory aggravating circumstances that may be weighed in deciding whether to impose the death penalty. *Id.* at 2577–78.

▮▮▮▮ Because the circumstances of a crime often provide "an appropriate context for consideration of the alleged aggravating and mitigating circumstances," we recognize that reference to the nature and circumstances of the crime in the sentencing statement "does not necessarily compel a conclusion that such matters were improperly considered and weighed as aggravating circumstances." *Prowell v. State,* 687 N.E.2d 563, 567 (Ind.1997). When the judge's oral remarks at sentencing refer to matters not included in the written sentencing statement, a reviewing court must evaluate the degree to which the judge may have relied upon the non-statutory factor. *Bellmore,* 602 N.E.2d at 128 n. 6. The same consideration is likewise appropriate in evaluating the role of non-statutory aggravating matters noted in the written sentencing statement. In the absence of clear contrary indications in the record, however, we will assume the sentencing order fully discloses the factors considered by the sentencing judge. *Prowell,* 687 N.E.2d at 567–68.

▮▮▮▮ From the combination of the trial court's remarks in open court that she was "convinced in her heart of hearts" that the defendant, "if given the opportunity, would murder again," Record at 2916, and of the court's written references in the sentencing statement to the innocence of the victims and the heinousness of the murders, we find a significant possibility that the trial court may have relied upon non-statutory aggravating factors in deciding whether to impose the death penalty. We therefore remand this cause to the trial court to redetermine from the evidence already presented whether to impose the death sentence, life without parole, or a term of years, based only upon mitigating and proper aggravating circumstances, and to issue a new sentencing statement.[6]

## Conclusion

The judgment of the trial court is af-

---

6. In the event the trial court sentences the defendant to death or life without parole, its statement of reasons "(i) must identify each mitigating and aggravating circumstance found, (ii) must include the specific facts and reasons which lead the court to find the existence of each such circumstance, (iii) must articulate that the mitigating and aggravating circumstances have been evaluated and balanced in determination of the sentence, and (iv) must set forth the trial court's personal conclusion that the sentence is appropriate punishment for this offender and this crime." *Harrison v. State,* 644 N.E.2d 1243, 1262 (Ind. 1995).

firmed except as to the death sentence,[7] which is vacated, and this cause is remanded to the trial court to reconsider its sentencing determination and to enter a new sentencing statement and judgment, in accordance with this opinion.

SULLIVAN, BOEHM, and RUCKER, JJ., concur.

SHEPARD, C.J., concurs with separate opinion.

SHEPARD, Chief Justice, concurring.

I join in the Court's decision to remand, largely because meticulous attention to capital cases at an early stage saves a good deal of effort later on.

I read Judge Gull's statements about Corcoran's multiple murders as explanations about why she gave high weight to the (b)(8) aggravator and I would be willing to affirm her on that basis, as it takes little analysis to conclude that four killings make for a weighty aggravating circumstance. Nevertheless, I agree that it is worth clarifying now that only statutory aggravating circumstances are being considered.

**7.** We therefore decline to address the defendant's contention that the death sentence

should be revised as manifestly unreasonable.