Brady McBRIDE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 89A01–0207–CR–263.

Court of Appeals of Indiana.

March 20, 2003.

E. Thomas Kemp, Richmond, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Andrew A. Kobe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant Brady McBride (McBride), appeals his convictions for two counts of attempted murder, Class A felonies, Ind.Code § 35–42–4–4(1); and battery, a Class C felony, I.C. § 35–42–2–1(a)(3).

We affirm.

### ISSUES

McBride raises four issues on appeal, which we restate as follows:

1. Whether the trial court properly determined that no *Batson* violation occurred;

2. Whether the trial court erred in instructing the jury in regard to Article I, § 19 of the Indiana Constitution;

3. Whether the unavailability of certain evidence denied him due process of law;

4. Whether comments made by the prosecutor during closing argument constituted fundamental error.

### FACTS AND PROCEDURAL HISTORY

On November 10, 1998, Jeffrey Garrison (Garrison) was driving home from work when Byron Moore (Moore) flagged him down to ask for a ride to a local convenience store. On their way to the convenience store, Garrison asked Moore if Moore knew where he could buy some drugs. Moore, sitting as a passenger in Garrison's pickup truck, directed Garrison to drive to a particular street.

While driving down this street, Moore waved to McBride to come towards the truck. Moore also instructed Garrison to pull the truck over to the curb. Next, Moore informed McBride that Garrison was looking for crack cocaine. McBride proceeded to hand a rock of crack cocaine to Moore who handed it to Garrison. Garrison put the rock of crack cocaine into his mouth to test it. Garrison determined that it was not crack cocaine so he handed it back to McBride, indicating that he did not intend to purchase it.

McBride became upset that Garrison had bitten off a piece of the rock and refused to purchase it. As a result, McBride pulled out a .38 caliber revolver from his waistband. At this point, Moore opened the door to exit the truck as McBride stuck the gun in the truck and fired one shot at Garrison. Garrison put the truck in gear and began to drive away as McBride fired a second shot in the truck. McBride fired a third shot at the truck when Garrison was leaving. Garrison drove to the hospital and was treated for gunshot wounds to his arm, abdomen, and thigh.

On December 2, 1998, the State filed an information against McBride charging him with Count I, attempted murder, a Class A felony, I.C. § 35–41–5–1, I.C. § 35–42–1–1(1); Count II, attempted murder, a Class A felony, I.C. § 35–41–5–1, 35–42–1–1(3)(A); and Count III, battery, a Class C felony, I.C. § 35–42–2–1(a)(3). On December 3, 1998, the trial court issued an arrest warrant for McBride. However, it was not until November 28, 2000, that the State

was able to locate McBride in detention in Butler County, Illinois.

On February 14, 2002, the State filed an amended information charging McBride with Count I, attempted murder, a Class A felony, I.C. § 35–42–1–1(1); and Count II, battery, a Class C felony, I.C. § 35–42–2–1(a)(3).

On February 20 through February 21, 2002, a jury trial was held. On February 21, 2002, a jury found McBride guilty of attempted murder. On April 19, 2002, a sentencing hearing was held. At the hearing, the trial court entered a judgment of conviction on Count I, attempted murder. Additionally, the trial court sentenced McBride to the Indiana Department of Correction for a period of thirty years.

McBride now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Batson Violation*

First, McBride argues that the trial court committed reversible error when the trial court overruled his objection to a *Batson* violation during voir dire. Specifically, McBride asserts that the trial court erred in denying his claim that the State's use of peremptory strikes to exclude the only two African–American individuals on the venire panel violated *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Alternatively, the State contends that McBride failed to demonstrate that the State's use of its peremptory strikes in order to remove the two African–American veniremen was purposeful racial discrimination.

■ There are three steps to resolve a *Batson* claim in the trial court. *See Forrest v. State,* 757 N.E.2d 1003, 1004 (Ind.2001). First, the party contesting the challenge must make out a prima facie case of racial discrimination by demonstrating that:

(1) the juror is a member of a cognizable racial group; (2) [the challenging party] has exercised peremptory challenges to remove that group's members from the jury; and (3) the facts and circumstances of this case raise an inference that the exclusion was based on race.

*Wright v. State,* 690 N.E.2d 1098, 1104–05 (Ind.1997) (citing *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87–8). Second, upon such a showing, the burden of production shifts to the proponent of the peremptory challenge to provide a race-neutral explanation. *Forrest,* 757 N.E.2d at 1004. If the explanation, on its face, is based on something other than race, the explanation will be deemed race-neutral. *Id.* (citing *Hernandez v. New York,* 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395, 406 (1991)). Third, the trial court must determine whether the party contesting the peremptory challenge has proved purposeful racial discrimination. *Forrest,* 757 N.E.2d at 1004.

■ Upon appellate review, a trial court's decision concerning whether a peremptory challenge is discriminatory is given great deference, and will be set aside only if found to be clearly erroneous. *McCants v. State,* 686 N.E.2d 1281, 1284 (Ind.1997) (citing *Hernandez,* 500 U.S. at 364, 111 S.Ct. at 1868–69, 114 L.Ed.2d at 408–09); *See also Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21, 90 L.Ed.2d at 89 n. 21 (trial court's finding "largely will turn on evaluation of credibility [and should be given] great deference").

■ In the present case, the State sought to exclude from jury service the only two prospective jurors in the venire pool who were African–American by using peremptory strikes. McBride objected to the State's use of these peremptory strikes

on the basis of a *Batson* challenge. In response to McBride's *Batson* objection, the State objected that McBride failed to make a prima facie case. The record reveals that the trial court refused to rule on this issue, but advised the State to make a record of its reasons for using the peremptory strikes. As a result, the State preserved its objection that McBride failed to meet his burden of proof by stating the following: that 1) both jurors maintain personal relationships with McBride and his family, 2) both jurors had encounters with the law, and 3) prospective juror Goodson–Lee indicated that she would be uncomfortable sitting as a member of the jury. Subsequently, the trial court then overruled McBride's objection to the State's use of peremptory strikes.

Our supreme court has held that using a peremptory challenge to remove the only prospective African–American juror does "raise an inference that the juror was excluded on the basis of race." *McCants*, 686 N.E.2d at 1284. In the instant case, the State's use of the two peremptory strikes to remove the only two African–American from the jury pool was based on something other than race. Thus, it became the responsibility of the trial court to determine from all of the circumstances whether McBride proved purposeful racial discrimination by the State. *Forrest*, 757 N.E.2d at 1004. Specifically, the record reflects that prospective juror, Hogg, graduated from high school with McBride's mother and still considered her a good friend. The record further reveals that prospective juror Goodson–Lee has known McBride since he was a little boy in Sunday school and that she knows his mother and other family members, making service on the jury an "awkward situation" for her. (Transcript p. 78). Because we review the trial court's ruling deferentially, we find no error in its decision to overrule McBride's objection and permit the two

peremptory strikes. *See McCants*, 686 N.E.2d at 1284.

## II. *Jury Instructions*

Next, McBride contends that the trial court failed to properly instruct the jury. Specifically, McBride argues that the trial court's instructions inhibited the jury from exercising its constitutional right to determine both the law and the facts. We disagree.

■ Instructing the jury lies within the sole discretion of the trial court. *Edgecomb v. State*, 673 N.E.2d 1185, 1196 (Ind.1996). When reviewing the propriety of the trial court's decision to refuse a tendered instruction, this court must consider the following: 1) whether the instruction is supported by the evidence in the record; 2) whether the instruction correctly states the law; and 3) whether other instructions adequately cover the substance of the denied instruction. *Flake v. State*, 767 N.E.2d 1004, 1007 (Ind.Ct.App. 2002). Jury instructions are to be considered as a whole and in reference to each other; error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case. *Edgecomb*, 673 N.E.2d at 1196. Before a defendant is entitled to a reversal, he must affirmatively show that the instruction error prejudiced his substantial rights. *Flake*, 767 N.E.2d at 1007.

Article I, § 19, of the Indiana Constitution reads as follows:

> In all criminal cases whatever, the jury shall have the right to determine the law and the facts.

■ However, an instruction which minimizes the jury's power of discretion in making a determination does not necessarily amount to reversible error, if accompanied by another instruction informing the jury that it is the judge of the law and the

facts. *See Flake,* 767 N.E.2d at 1007; *See also Wright v. State,* 730 N.E.2d 713, 716–17 (Ind.2000) (where the trial court stated that "it is proper to tell the jury it "should" convict." But, to instruct the jury thus, the court must also instruct the jury that they are judges of the law and the facts.)

█ In the instant case, the trial court gave the following final instruction:

In your deliberations on the charges against [McBride], you should first determine whether [McBride] is guilty or not guilty of attempted murder. In order to prove [McBride] guilty of attempted murder, as alleged in count one of the Information, the State must prove beyond a reasonable doubt each of the following elements. That on or about the tenth day of November, 1998, [McBride] did one, intentionally shoot a handgun at Jeffrey Garrison; two, with the intent to kill Jeffrey Garrison; Three, the shooting of Jeffrey Garrison constituted a substantial step towards the killing of Jeffrey Garrison. *If the State has proved each of these elements then [McBride] is guilty of attempted murder and the appropriate form of your verdict would be,* "We, the jury, find the defendant, Brady McBride, guilty of attempted murder, as charged in count one." If the State has failed to prove each of these elements then [McBride] is not guilty and the appropriate form of your verdict would be, "We, the jury, find the defendant, Brady McBride, not guilty of attempted murder, as charged in count one." If you find [McBride] not guilty of attempted murder, you should then consider count two, battery. If you find [McBride] guilty of attempted murder, you need not consider any other offenses.

(App.65) (emphasis added). McBride argues that the above italicized language cre-

ated a presumption in violation of the case law contained in *Seay v. State,* 698 N.E.2d 732 (Ind.1998).

In *Seay,* our supreme court held that the trial court erred when it instructed the jury that it was the judge only of the facts, and that it was restricted to determine the facts only and not the law. *Seay,* 698 N.E.2d at 737. Nevertheless, our supreme court summarily adopted this court's determination that the giving of the instruction did not amount to reversible error. *Id.; See Seay v. State,* 673 N.E.2d 475, 480 (Ind.Ct.App.1996) (holding in part that the habitual offender instructions did not make it impossible for Seay to receive a fair trial). The final instruction presently before us is similarly misleading.

Here, however, the errant instruction was accompanied by the following instruction:

Under the Constitution of the State of Indiana the jury is given the right to determine both the law and the facts. The instructions of the Court are your best source in determining the law.

(Appellant's App. p. 65). This instruction clearly expressed the dictates of Article I, § 19, of the Indiana Constitution. Accordingly, the final jury charge did not prevent the jury from exercising its constitutional discretion and no reversible error took place. *See Flake,* 767 N.E.2d at 1007; *Edgecomb,* 673 N.E.2d at 1196.

### III. *McBride's Denial of Due Process of Law*

█ McBride further argues that he was denied due process of the law and the right to a fair trial. In particular, McBride asserts that the State failed to preserve material evidence for trial. Although the State concedes that the evidence was potentially useful evidence, the State maintains that McBride has failed to

show that the State acted in bad faith in not producing the evidence at trial.

Adopting the United States Supreme Court's decision in *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), our supreme court has declared that the scope of the State's duty to preserve exculpatory evidence is:

> ... [l]imited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Albrecht v. State*, 737 N.E.2d 719, 724 (Ind. 2000) (quoting *Holder v. State*, 571 N.E.2d 1250, 1255 (Ind.1991)). The bullet, Garrison's clothing, and the truck that Garrison drove the day of the incident do not meet the standard of constitutional materiality, as McBride has not shown that these items played a significant role in his defense. More specifically, he has not demonstrated that these items possessed an exculpatory value. *Holder*, 571 N.E.2d at 1255. Exculpatory is defined as '[c]learing or tending to clear from alleged fault or guilt; excusing.' *Albrecht*, 737 N.E.2d at 724 (quoting BLACK'S LAW DICTIONARY 566 (6TH ED.1990)).

The record reveals that the police recovered a spent bullet that was lying on the driver's seat of Garrison's truck. However, this bullet was destroyed six to eight months before trial because it was logged under the wrong name. Additionally, pictures were taken of Garrison's truck on the day of the incident. These pictures were developed by the Richmond Police Lab, but were subsequently misplaced. Nevertheless, even assuming the bullet, truck, and clothes could be tested to help determine the path taken by the bullet and the distance of the gun from Garrison's arm, such results would not have risen to the level of clearing McBride of the attempted murder of Garrison. The record reveals that McBride admitted to firing at close range in the cab of the truck. Although the pictures and the truck could have also been analyzed to determine the path or resting points of the two bullets, we find that this evidence would be of minimal exculpatory value.

At most, the notes may have been potentially helpful to McBride's case as additional evidence. However, the State's failure to preserve useful evidence violates the Fourteenth Amendment only when the defendant can show bad faith on the State's part. *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), *reh'g. denied; see also Killian v. United States*, 368 U.S. 231, 242, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961) (declaring that where the pre-trial destruction of an FBI agent's notes, which were transferred to other documents that were made available to the defense, was done in good faith as part of a normal practice, their destruction would not be impermissible nor deprive a defendant of any right). Here, McBride has made no showing of bad faith. Accordingly, he was not denied due process of law nor the right to a fair trial.

### IV. *Prosecutorial Misconduct*

Lastly, McBride contends that his attempted murder sentence should be reversed because some of the prosecutor's remarks during closing argument constituted prosecutorial misconduct. Specifically, McBride urges that the prosecutor's rhetoric was excessively inflammatory and that it concentrated on the prosecutor's personal knowledge. Further, McBride maintains that the prosecutor committed reversible error when he asked the jury to

consider their own child sitting in Garrison's place. We note that McBride failed to object to these statements at trial.

 Appellate recourse is not available for the review of alleged trial misconduct when the complaining party failed to timely object at trial. *Corcoran v. State,* 739 N.E.2d 649, 655 (Ind.2000). McBride argues that the misconduct constituted "fundamental error," a doctrine under which an appellate claim may be considered notwithstanding the failure of a contemporaneous trial objection. For this exception to apply, however, we must find that the alleged misconduct so prejudiced the defendant's rights as to make a fair trial impossible. *Id.*

 When reviewing an allegation of prosecutorial misconduct, this court makes two inquiries. First, we determine by reference to case law and rules of conduct whether the prosecutor engaged in misconduct. *Impson v. State,* 721 N.E.2d 1275, 1280 (Ind.Ct.App.2000). Second, we must determine whether the alleged misconduct placed the defendant in a position of grave peril to which he should not have been subjected or evidenced a deliberate attempt to improperly prejudice the defendant. *Id.* "Grave peril" is determined by analyzing the "probable persuasive effect of the misconduct on the jury's decision ..." *Stevens v. State,* 691 N.E.2d 412, 420 (Ind.1997).

 Disciplinary Rule 7–106(C)(3) governs trial conduct: "In appearing in his professional capacity before a tribunal, a lawyer shall not ... (a) assert his personal knowledge of the facts in issue, except when testifying as a witness." Here, McBride argues that the prosecutor was imparting his personal knowledge to the jury regarding the functioning of revolvers, and in turn used this personal knowl-edge to argue that McBride lied to the jury. Specifically, the prosecutor stated:

What I've done here, this is a—a diagram of the cylinder of a revolver, as if you were looking into the revolver itself. The way the defendant described it, the top space here, this top chamber, was empty. This was the on[e] that was lined up with the barrel of the gun. He said that when he pulled the trigger, nothing happened. He's full of crap.

'Cause here's what happened, folks. If it was as he said it was, here's what was going to happen. You pull the trigger back, you're going to, depending on the make of the gun, it's going to advance it one up. And so if he's pulled the trigger back as he said, that very first shot that he pulled it would have fired a bullet. And you got—and the people that are familiar with guns know that. He lied to you. That's the bottom line, he lied to you. And if he lied to you about that, what else has he also lied to you.

(Appellant's App. p. 62). Although our supreme court has previously held that a prosecutor may not impart his personal knowledge to the jury, such is not the case here. *See Evans v. State,* 497 N.E.2d 919, 922 (Ind.1986). The record reveals that the prosecutor's argument regarding the revolver was a comment on evidence in the record. In particular, McBride testified that the weapon he used was a .38 caliber revolver. The record reflects that McBride testified that although the gun held six bullets, there were only five in the gun at the time of the incident. Further, McBride testified that the empty chamber was lined up with the barrel, so that the first time he pulled the trigger no bullet was fired. However, the record further reveals that McBride later agreed that when the trigger is pulled the next cylinder loads itself. Thus, we find that the prosecutor simply was pointing out the

inconsistency in McBride's testimony. Furthermore, the State was simply commenting on the evidence that was introduced at trial. Therefore, McBride has not shown that this comment constituted fundamental error.

 Additionally, McBride asserts that the prosecutor committed reversible error when he stated:

> And I want—and if you don't think it is folks, if—if you don't think that this is an attempted murder, I want you to think about this. If this was your son or daughter that was sitting in the cab of the truck, or if this was you, and somebody fired on your child twice like that, what would you call it? Would you call it just a reckless act? No, you wouldn't. You'd say someone was trying to murder my child and this defendant was trying to murder Jeff Garrison on that date.

(Appellant's App. p. 63). We agree with McBride that the part of the prosecutor's rebuttal closing argument at issue here was ill-advised and inappropriate. It was potentially misleading to tell the jury to imagine their child in Garrison's position. The emphasis was improperly shifted from whether McBride was guilty to whether the victim was guilty or innocent. Considered in this light, the prosecutor's argument misrepresents the law and constitutes misconduct. *See* I.C. § 35–41–4–1(a) ("A person may be convicted of an offense only if his guilt is proved beyond a reasonable doubt"); *Maldonado v. State*, 265 Ind. 492, 355 N.E.2d 843, 849 (1976) ("It is misconduct for a prosecutor to request a jury to convict a defendant for any reason other than his guilt.")

 However, this instance of misconduct did not rise to the level of reversible error because McBride was not placed in grave peril by the remarks. The prejudicial effect of an isolated improper remark is aggravated by repeated instances of misconduct and the cumulative impact may require reversal. *Evans*, 497 N.E.2d at 922. The prosecutor in this case made two statements, 1) McBride's testimony regarding the revolver and 2) asking the jury to put their child in Garrison's place. However, defense counsel failed to request an admonishment or a mistrial, indicating the damage was not as severe as appellant now suggests. Moreover, it is unlikely that the misconduct had a persuasive prejudicial effect on the jury in light of the strength of the evidence against McBride. Under these circumstances, we conclude that McBride's allegations of prosecutorial misconduct in final argument do not show improper prejudice to McBride's rights thereby making a fair trial impossible. *See Corcoran*, 739 N.E.2d at 655. Therefore, these claims do not qualify for the "fundamental error" exception, and it was forfeited by procedural default. *Id.*

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly convicted McBride of attempted murder.

Affirmed.

BAKER and MATHIAS, JJ., concur.