## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 15 2016, 8:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cynthia P. Helfrich
Helfrich & Harrell, LLC
Avon, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika P. Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Nicholas King,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 15, 2016

Court of Appeals Case No.
32A04-1508-CR-1258

Appeal from the Hendricks Superior Court.
The Honorable Robert W. Freese, Judge.
Cause No. 32D01-1209-FC-123

**Sharpnack, Senior Judge**

# Statement of the Case

Nicholas King appeals his convictions for burglary as a Class C felony,[1] theft as a Class D felony,[2] and possession of a controlled substance as a Class D felony.[3] He alleges the trial court erred when it denied his motion to suppress and violated his privilege against self-incrimination. We affirm.

# Issues

King raises the following restated issues for our review:

I. Whether the trial court abused its discretion when it admitted evidence obtained from a search of his property; and

II. Whether comments made by the special prosecutor and the trial court judge violated King's privilege against self-incrimination.

# Facts and Procedural History

Dennis Nottingham was a broker-owner with a real estate company. In 2012, Nottingham was under contract to list and sell homes for the Federal National Mortgage Association (hereinafter, Fannie Mae) that had been foreclosed upon. Nottingham hired Steven Atkins as a property inspector for the homes. Atkins

---

[1] Ind. Code § 35-43-2-1 (1999).

[2] Ind. Code § 35-43-4-2(a) (2009).

[3] Ind. Code § 35-48-4-7(a) (2011).

was responsible for ensuring the homes were secure and free from damage. In 2012, the doors to the Fannie Mae homes were secured by key codes and all of the homes could be accessed with the same code. Nottingham provided Atkins with the code, but he did not give Atkins permission to share the code with third parties not affiliated with Fannie Mae.

[4] Nottingham's real estate company was assigned by Fannie Mae to oversee repairs to a property located in Danville, Hendricks County, Indiana, and to market and sell the property. On May 18, 2012, Fannie Mae ordered an electric range, a microwave combined with a range hood, and a dishwasher for the Danville home. The appliances, all in the color black, were delivered to the Danville house on June 8, 2012. Nottingham testified that the appliances were not defective, that they did not need to be replaced, and that he did not give anyone permission to remove the appliances from the Danville house.

[5] Atkins, who had met King a few days before, provided King with the code to enter the Danville home so that King could remove the new appliances. King did not work for Nottingham; Nottingham did not know King; Nottingham did not give King the Danville house access code; and, Nottingham did not give King permission to enter the Danville house. According to Atkins, it was "just assumed" that King knew he would be entering the Danville house to perform an illegal act. Tr., Vol. I, p. 150. Atkins testified at trial that King had informed him he "could get like six hundred dollars for [the appliances]." *Id*. at 154. Atkins instructed King to walk around the Danville house as a contractor

would, to carry a camera and a clipboard, and to cover his tattoos so that he would not raise suspicion.

[6] Sometime in the morning of September 11, 2012, King drove to the Danville house in a box truck to remove the appliances. When he arrived, he called Atkins to tell him the mother of the individual who was purchasing the house was present. Atkins told King to tell the person he was removing the black colored appliances to replace them with stainless steel appliances.

[7] The next day, the buyer of the Danville house called the Danville Police Department and reported that the previous day his mother saw two men and a box truck in the driveway and that the two men removed appliances from the home. The mother remembered seeing the words "Van Gogh" on the side of the truck. A detective with the Danville Police Department drove to the Danville house and encountered Atkins at the house. The detective and Atkins entered the house and confirmed the appliances were missing.

[8] Soon after, the detective searched for and found contact information for Paul Wheeler, who owned a courier business that used a white box truck with the name "Van Gogh" painted on its side. Wheeler had left his truck with the King of the Road repair shop so that the truck could be repaired. King's father, Gary King, was the manager for the repair shop. The Danville police detective spoke with Wheeler, determined the truck was stolen because Wheeler did not give permission to anyone at the repair shop to drive the truck (beyond taking the

truck for maintenance test drives), and learned through Wheeler's GPS system that the truck was located at King's residence.

[9] The detective drove to King's residence. Upon arrival, he noticed immediately the white Van Gogh box truck in King's backyard and several individuals standing near the truck. The detective requested assistance from other police officers. When the officers arrived at King's residence, King approached the detective and told him "this must be about the appliances." *Id*. at 166. The officers Mirandized all of the individuals who were present and separated the individuals. At some point, King was placed in handcuffs. The detective asked for consent to search King's property. King consented to the search. The missing appliances were found inside of the box truck; a glass pipe commonly used for drug use was found in King's garage; and, what was later tested and determined to be anabolic steroids were found in King's residence.[4] After the search was completed, King was transported by the officers to the police station. Upon arrival, King provided a statement to the police and aided the officers with the investigation.

[10] King was arrested and the State charged him with Class C felony burglary, Class D felony theft, Class D felony auto theft, Class D felony receiving stolen property, Class D felony possession of a controlled substance, and Class A misdemeanor possession of paraphernalia. Prior to trial, King, pro se, filed a

---

[4] Other items were found incident to the search; however, those items are not a part of this case.

motion to suppress the evidence found on his property.[5]  The trial court, after holding a hearing, denied the motion.  During the trial, the State offered several exhibits into evidence, consisting of pictures of items the police found when they searched the box truck and including the missing appliances.  The State also offered other evidence pertaining to the items found during the search of King's property.  King made no objection to the admission of the evidence.

[11]  At the conclusion of the trial, the jury found King guilty of Class C felony burglary, Class D felony theft, and Class D felony possession of a controlled substance.  King now appeals.

# Discussion and Decision

[12]  King contends the trial court erred when it denied his motion to suppress evidence found during the search of his property.  Although King originally challenged the admission of the evidence through a motion to suppress, he appeals following a completed trial and challenges the admission of such evidence at trial.  "Thus, the issue is . . . appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial."  *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003).  Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pretrial motion to suppress or by trial objection.

---

[5] King had two attorneys who represented him pretrial.  The first attorney withdrew from the case and a second attorney was appointed.  The second attorney also withdrew and King elected to represent himself at trial.  King is represented by counsel in this appeal.

*Ackerman v. State*, 774 N.E.2d 970, 974 (Ind. Ct. App. 2002), *trans. denied.* We review the trial court's ruling for abuse of discretion. *Reinhart v. State*, 930 N.E.2d 42, 45 (Ind. Ct. App. 2010). We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.* We also defer to the trial court's factual determinations unless clearly erroneous. *Id.* However, we consider afresh any legal question of the constitutionality of a search or seizure. *Id.*

### I. Consent to Search / Admissibility of Evidence

[13] King argues the trial court erred in admitting into evidence items found during the police officers' search of his property. King claims his consent to the search of his property is invalid because he was in police custody at the time consent was given and should have received the *Pirtle* warning prior to giving his consent.[6] *See Pirtle v. State*, 263 Ind. 16, 29, 323 N.E.2d 634, 640 (Ind. 1975) ("a person who is asked to give consent to search while in police custody is entitled to the presence and advice of counsel prior to making the decision whether to give such consent"). We do not reach King's claim.

[14] It has long been the rule in Indiana that although a motion to suppress has been overruled prior to trial, when the evidence is later offered at trial no error will be preserved unless there is an objection at that time. *See Wagner v. State*, 474

---

[6] In his brief, King calls into question whether he provided police consent to search his property. However, King does not develop this argument and we will not make the argument for him.

N.E.2d 476, 484 (Ind. 1985) ("When a motion to suppress has been overruled and the evidence sought to be suppressed is later offered at trial, no error will be preserved unless there is an objection at that time."); *see also Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004) (observing that pro se litigants without legal training are held to the same standard as trained counsel and are required to follow procedural rules), *trans. denied*. A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that fundamental error occurred. *See, e.g.*, *Trice v. State*, 766 N.E.2d 1180, 1182 (Ind. 2002); *Hayworth v. State*, 904 N.E.2d 684, 694 (Ind. Ct. App. 2009). However, as our Supreme Court held in *Brown v. State*, 929 N.E.2d 204, 205 (Ind. 2010), "a [claim of] error in admitting unlawfully seized evidence at trial . . . , without more, does not assert fundamental error."

[15] King did not object at trial to the admission of the pictures of the missing appliances found in the box truck. When the exhibits were offered into evidence at trial, the trial court specifically asked King, "Objection to [Exhibits] 2 through 14 Mr. King?" Tr., Vol. 1, p. 169. Although the transcript indicates that King made no audible response to the court's question, it does not appear that King objected to the admission. The transcript indicates the exhibits were admitted into evidence.

[16] King also did not object to the admission of the forensic scientist's report that analyzed the steroids found during the search of his property and determined the steroids to be Testosterone, a controlled substance. When the trial court

asked King if he had any objection to the introduction of the report, King replied, "No Sir." *Id.* at 214.

[17] King's failure to object at trial to the admission of the evidence he sought to suppress has resulted in a waiver of any claim that it was error to admit the evidence. King's assertion that the evidence was the product of an unconstitutional search and seizure, without more, does not rise to the level of a claim of fundamental error.

## II. Fifth Amendment Privilege Against Self-Incrimination

[18] King next argues comments made at trial by the prosecutor and the judge infringed on his right against self-incrimination. At his trial, King's wife testified on his behalf regarding the police officers' search of his property. On cross-examination, the prosecutor asked the wife about written notes she had prepared and used during a deposition, as well as the use of the notes during her testimony. The prosecutor then offered into evidence copies of the written notes, and the notes were admitted.

[19] During re-direct examination, the following exchange between King and his wife took place:

> [MR. KING]. Yes, um, if I gave you three pieces of paper or six pieces of paper right now could you right [sic] that right now in front of everybody?
>
> [WIFE]. Yeah.
>
> [MR. KING]. Without nobody telling you what to right [sic]?
>
> [WIFE]. Yeah.

[MR. KING]. Will you do it for me?

[WIFE]. Yeah, it might take me a little bit but.

[MR. KING]. That's fine.

STATE: If the defendant is going to testify I am going to ask that he be put under oath so he can be cross examined [sic] by the State.

COURT: Mr. King, you are to ask the witnesses questions, and so if you want to take the stand, maybe you can go ahead and do what he is requesting.

MR. KING: I am not requesting you to do that, [sic] if you want to do that to prove the point go ahead, [sic] I am asking if you could do it [sic] you said yes s [sic].

COURT: I thought you asked her to do it?

MR. KING: I asked her if she could do [it.] I am done with further questions.

COURT: Re-Cross if any?

STATE: I don't have any judge.

[20]     *Id.* at 234-35.  According to King, the comments of the prosecutor and judge regarding King testifying "constitute[d] fundamental error in that [the comments were] 'clearly blatant violations of basic and elementary principles of due process.'"  Appellant's Br. p. 11.  King asks this Court to remand this matter for a new trial.

[21]     Although King did not object to the statements of the trial court and the prosecutor, he contends the prosecutor and the trial court committed fundamental error reviewable without the need to preserve the error.  For the fundamental error doctrine to apply, however, we must find the alleged error so

prejudiced the defendant's rights as to make a fair trial impossible. *Corcoran v. State*, 739 N.E.2d 649, 655 (Ind. 2000). Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. It is error that makes "a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process . . . present[ing] an undeniable and substantial potential for harm." *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002).

[22] The Fifth Amendment to the United States Constitution prohibits compelling a defendant to testify against himself and has been interpreted to bar prosecutorial comment on a defendant's silence. *Jenkins v. State*, 725 N.E.2d 66, 69 (Ind. 2000) (*citing Griffin v. California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 1233, 14 L. Ed. 2d 106 (1965)). A Fifth Amendment violation occurs "'when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence.'" *Id.* (*quoting Moore v. State*, 669 N.E.2d 733, 739 (Ind. 1996)).

[23] Even if we assume the prosecutor's comment at King's trial was improper, we conclude the comment does not rise to the level of fundamental error. "For prosecutorial misconduct to be fundamental error, it must be demonstrated that the prosecutor's conduct subjected the defendant to grave peril and had a probable persuasive effect on the jury's decision." *Hancock v. State*, 737 N.E.2d 791, 798 (Ind. Ct. App. 2000). We also do not agree the trial judge's comments require reversal here.

The prosecutor merely stated, "If the defendant is going to testify[,] I am going to ask that he be put under oath so he can be cross examined [sic] by the State." Tr., Vol. I, p. 234. The trial court judge was merely attempting to clarify the prosecutor's comments, and to caution King that he must present questions to his witness and not have the witness create a written statement while on the stand. The comments of neither the prosecutor nor the trial court subjected King to grave peril, and we are not convinced the comments had any probable persuasive effect on the jury's decision, given the evidence presented at trial. There was no fundamental error; therefore, King's claim as to this issue fails.

# Conclusion

For the reasons stated above, the judgment of the trial court is affirmed.

Affirmed.


Kirsch, J., and Pyle, J., concur.