**Charles CLARK, Petitioner–Appellee,**

**v.**

**Jack R. DUCKWORTH and Indiana Attorney General, Respondents–Appellants.**

**No. 89–3497.**

United States Court of Appeals, Seventh Circuit.

Argued April 20, 1990.

Decided July 13, 1990.

---

Kathryn Butler O'Neall, O'Neall & O'Neall, Remington, Ind., for petitioner-appellee.

David A. Nowak, Dist. Atty. Gen., Linley E. Pearson, Atty. Gen., Indianapolis, Ind., for respondents-appellants.

Before CUMMINGS, CUDAHY and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

A jury convicted Charles Clark of attempted rape, battery and intimidation in connection with the rape and beating of a

woman in Indiana. After filing several post-trial motions and unsuccessful appeals to Indiana state courts, Clark petitioned a federal district court for habeas corpus relief pursuant to 28 U.S.C. section 2254. That court determined that Clark's constitutional rights had been violated at trial and therefore granted his petition subject to a new trial. Jack R. Duckworth, the Superintendent of the Indiana State Prison at Michigan City, Indiana, appeals that decision to us. We now vacate and remand.

## I.

The facts supporting the jury's conviction of Clark are detailed in *Clark v. State*, 447 N.E.2d 1076 (Ind.1983). They need not detain us, however, for we are concerned primarily with constitutional errors that occurred at trial. We pause here only to note that the jury apparently believed that Charles Clark forced Kathy Tompkins into a barn, struck her and attempted to rape her. The jury was not asked to consider the case of Clark's accomplice in this crime, Terry Ray Isaacs, because he had earlier pleaded guilty to rape. But the jury did become acquainted with Isaacs when the prosecutor in Clark's trial called Isaacs to the stand to testify to the facts surrounding the crime. In this appeal, we must address the substance of Isaacs's testimony to the jury, for it is this testimony that resulted in a violation of Clark's constitutional rights.

At first, attorneys for the state and the defendant disagreed about the propriety of calling Isaacs to the stand. To resolve this dispute—and to persuade the court that the testimony should be admitted—the prosecution offered to establish the scope of its direct examination of Isaacs outside the presence of the jury. After the jury had been excused, the prosecutor asked Isaacs to explain to the court how he would testify. Isaacs responded: "Uh, I—I can't, because I've been threatened, and uh, well on two different occasions I've been threatened, and I just can't on account of my life is in jeopardy." Memorandum and Order at 14 (N.D. Ind. Aug. 31, 1989) (quoting Record at 608–22). Essentially, Isaacs told

the court that he could not testify because two inmates at the prison threatened to kill him if he "snitched" about the case. At this point, Clark's lawyer vigorously objected to the prosecutor's request to put Isaacs on the stand; he claimed that he would be unable effectively to cross-examine Isaacs if Isaacs refused to answer any questions regarding the case. Still, the trial judge allowed the state to call Isaacs to the stand but warned the prosecutor to confine his questions to whether Isaacs would testify. The court expressly confirmed that neither the prosecutor nor Isaacs could refer to the alleged threats. *Id.* at 18–19.

Upon the jury's return, the following colloquy took place in the courtroom:

Q. [Prosecutor] Please state your name for the record.

A. Terry Ray Isaacs.

Q. Where are you presently living?

A. Michigan City State Prison.

Q. Are you serving a sentence there?

A. Yes sir, I am.

Q. For what?

A. For rape.

Q. Uh, did you plead guilty to the charge?

A. Yes sir.

Q. And the rape of whom?

A. Kathy Tompkins.

Q. *Is there anything you want to tell this jury about the circumstances surrounding that?*

A. Uh, nothing that I'm—*that I've been threatened and I can't testify.*

MR. SHAW: Your Honor, I'm going to object and ask that answer be stricken the answer is either yes or no.

JUDGE KERRIGAN: The, uh —.

MR. SHAW: We've been through this.

JUDGE KERRIGAN: It'll be stricken, grant the objection and strike the answer.

MR. URDAL: No further questions.

MR. SHAW: No questions.

QUESTION OF TERRY RAY ISAACS BY JUDGE KERRIGAN:

Q. You understand that your testimony could not incriminate yourself, you have —there's nothing pending against you and you could be under contempt of

Court for failure to answer any proper question of the Prosecutor, do you understand that?

A. Yes. *I'm asking you for your protection of these threats.*

JUDGE KERRIGAN: All right. You can step aside.

MR. SHAW: Your Honor, I would ask—.

JUDGE KERRIGAN: Any remark about *threats* will be disregarded by the jury.

*Id.* (emphasis supplied).

## II.

■ The statements made at Clark's trial by Isaacs—and then reinforced by the trial judge in his "curative" instruction to the jury—clearly violated Clark's Fourteenth Amendment right to a fair trial free from prejudicial and irrelevant evidence as outlined in *Dudley v. Duckworth,* 854 F.2d 967 (7th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989). In *Dudley,* a case remarkably similar to this one, a codefendant told the court that he feared testifying against the defendant because he had received phone calls—presumably made to dissuade him from testifying—threatening harm to his girlfriend, mother and aunt. Counsel for the defendant objected, noting that the testimony about threats was highly prejudicial and not probative in light of the fact that the prosecution did not present any evidence linking the telephone threats to the defendant. Still, the trial judge denied counsel's motions to strike the testimony and to declare a mistrial. After the presentation of evidence, the jury convicted Dudley of aiding a bank robbery. On appeal, we reversed the conviction, reasoning that the codefendant's testimony concerning threats unfairly prejudiced the defendant's case: "the trial court's ruling allowing the testimony to stand 'is of such magnitude that the result is a denial of fundamental fairness.' *United States ex rel. Palmer v. DeRobertis,* 738 F.2d 168, 170 (7th Cir.), *cert. denied,* 469 U.S. 924 [105 S.Ct. 306, 83

L.Ed.2d 241] (1984)." *Dudley,* 854 F.2d at 972.[1]

Clark's case is similar: the state trial judge failed to take appropriate action after a codefendant, who had already pleaded guilty to the same crime, told the jury that he had received threats to prevent him from testifying. This testimony may have led the jury to believe that Clark, ultimately, was behind the threats, despite the fact that the government presented no evidence to support this implication. To make matters worse (and, perhaps, to reinforce the link between the threats and Clark's underlying guilt), the trial judge then questioned Isaacs about the threats and told the jury "[a]ny remark about *threats* will be disregarded...." Memorandum and Order at 23 (emphasis supplied).

There is little question, we believe, that these proceedings violated Clark's Fourteenth Amendment rights under *Dudley v. Duckworth.* We are not alone in this belief: even Duckworth, the appellant in this case, agrees with our conclusion. Appellants' Brief at 7 ("The state court record indicates that a *Dudley* violation occurred at Clark's trial."). But Duckworth contends that Clark waived his right to make this argument in federal court (during habeas proceedings) because he failed to make it first in state court. In essence, Duckworth asserts that Clark's procedural default precludes federal review of the *Dudley* violation.

## III.

■ Duckworth argues, and Clark does not directly contest, that Clark never raised the *Dudley* issue in any of his state court proceedings. Clark concedes in his brief "that he did not raise an error as to the admission of the testimony by Isaacs" before reaching federal court. Appellee's Brief at 9. But Clark contends that he raised the *Dudley* issue through his ineffective assistance of counsel claim, which

1. We reasoned: "'Since threats tend to show guilty knowledge or an admission of guilt on the part of the defendant, a proper foundation must be laid showing the threats were made either by the defendant or with his or her knowledge or authorization.... Barring such a showing, the highly prejudicial nature of such testimony requires its exclusion.'" *Dudley,* 854 F.2d at 970 (quoting *Cox v. State,* 422 N.E.2d 357, 361–62 (Ind.App.1981)).

he made in his appeal following the denial of post-conviction relief. In that proceeding, he argued:

> Counsel was ineffective in failing to request a mistrial over Isaacs' statements. "The naive assumption that prejudicial effects can be overcome by instructions to the jury ... all practicing lawyers know to be unmitigated fiction." *Krulewitch v. State* (1949), 336 U.S. 440 [69 S.Ct. 716, 93 L.Ed. 790].... The court and the State were aware of the possibility that Isaacs would disclose his reason for not testifying. Isaacs should never have been placed on the stand at all. Doing so caused the exact harm that counsel had sought to prevent—the implication that Clark was guilty because he had threatened Isaacs not to testify. Had counsel requested a mistrial, the court would have had to grant it under *Ramos* [*v. State*, 433 N.E.2d 757 (Ind. 1982)]. Counsel's failure to act prejudiced Clark. *See Strickland v. Washington* (1984), 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674]....

Brief of Petitioner–Appellant at 11 (reprinted in Supp.App. at 45). Clark believes that this analysis sufficiently raises the *Dudley* argument to preclude procedural default.

We disagree. In *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court determined that a habeas petitioner, who attempted to challenge the method by which the prosecutor chose the jurors that convicted him, waived an Equal Protection claim based upon *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), by not raising it in the state proceedings, despite the fact that he had expressly maintained a Sixth Amendment fair cross-section claim in those same proceedings. Although the Equal Protection claim and the Sixth Amendment claim arose from the same general issue—a fairly constituted jury— the Court concluded that Teague's failure specifically to raise the Equal Protection claim in the state court proceedings resulted in its waiver. *Teague*, 109 S.Ct. at 1068.

*Teague v. Lane* compels the same result here. Clark's failure to give the state court an opportunity to consider specifically his *Dudley* claim precludes us from considering it now in federal court. There is little doubt that Clark never gave Indiana courts an opportunity to pass on this claim: the Indiana Court of Appeals, considering Clark's appeal from the trial court's denial of his post-conviction relief, noted that "Clark did not claim error in the admission of the testimony in his direct appeal or in his petition for post-conviction relief. Since the issue was available then, he has waived it. *Dodson v. State* (1987), Ind., 502 N.E.2d 1333." Memorandum Decision at 2 (reprinted in Supp.App. at 27). This plain statement of waiver satisfies the rule developed in *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case ' "clearly and expressly" ' states that its judgment rests on a state procedural bar." *Id.* 109 S.Ct. at 1043 (citations omitted). In essence, the highest state court to consider Clark's post-conviction claims has determined, in clear terms, that Clark waived the *Dudley* issue. This is sufficient, under *Harris v. Reed*, to invoke procedural default.

■ To salvage his *Dudley* claim during these habeas proceedings, then, Clark must demonstrate the existence of "cause and prejudice," *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), or he must show that the proceedings resulting in his conviction amounted to a "fundamental miscarriage of justice." *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Clark does not attempt to make either showing, nor do the facts of his case support such exceptions to the general rules of procedural default. Those rules, therefore, preclude Clark from directly raising his *Dudley* claim in federal court during these habeas proceedings.

### IV.

■ This conclusion, however, should not be read to suggest that Clark has defaulted *all* of his habeas claims. Indeed,

the district court based its decision to grant Clark's petition for habeas corpus on a claim never made by Clark in his brief before that court. In its Memorandum and Order, the district court concluded that it had "no choice but to grant this writ" because "the reference to threats by the witness, Terry Isaacs, upon questioning by Judge Kerrigan is within the scope of the constitutional violation found in *Dudley*." Memorandum and Order at 26, 24. But Clark never directly claimed a *Dudley* violation in federal court; rather, he claimed that his attorney's failure effectively to prevent Isaacs from testifying to threats he received constituted *ineffective assistance of counsel*. This claim was contained in Ground Two of his petition:

> Petitioner was denied Effective Assistance of Counsel in that, counsel failed to move for a mistrial or cross-examine a state witness after the witness testified he had received threats not to testify, which resulted in prejudice to petitioner in that, the evidence of guilt was weakly supported, and the jury was allowed to infer that petitioner had made the threats, contrary to the Sixth Amendment to the United States Constitution.

Further, although Clark mentioned the *Dudley* issue in his "Traverse to Return,"[2] he did so only to prove that *"his attorneys [sic] performance* fell below an objective standard of reasonableness, when he failed to move for a mistrial or cross-examine the witness to demonstrate that the petitioner had nothing to do with the threats." Traverse to Return at 23 (emphasis supplied). Clark did not argue that the *Dudley* violation, by itself, constituted grounds for habeas corpus relief.

The district court should have addressed Clark's claim, as it appeared in his brief, that he received ineffective assistance of counsel.[3] Its failure to do so requires us to remand the case to the district court for reconsideration of this claim. Clark did not waive this claim: he appears to have properly presented it to the Indiana Court of Appeals, which reviewed his appeal for post-conviction relief, and to the federal district court, which reviewed his petition for habeas corpus. *See* Memorandum Decision at 2 n. 1 (Ind.App.Ct. Nov. 22, 1988) (unpublished) ("Because the same counsel represented Clark in his appeal and at trial, he has not waived his claim of ineffective assistance of counsel. *Davis v. State* (1975), [164] Ind.App. [331], 328 N.E.2d 768.").

In order to prevail on remand, Clark must demonstrate that his attorney's performance was objectively unreasonable, and that but for this performance, there is a reasonable probability that the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984); *United States v. Moya–Gomez*, 860 F.2d 706, 763 (7th Cir.1988). Clark's reference to Isaacs's testimony in the state court proceedings—and Duckworth's concession that a *Dudley* violation did occur—are certainly important factors to be considered in determining whether Clark's attorney rendered ineffective assistance at trial. But we leave it to the district court to determine whether these and other factors amount to ineffective assistance of counsel under *Strickland*.

VACATED AND REMANDED.

---

2. "Used almost exclusively these days by prison inmates to describe certain pleadings, the term 'traverse' merely means 'a denial.' *See* Black's Law Dictionary 1345 (5th ed.1979)." *Lowery v. Young*, 887 F.2d 1309, 1311 n. 3 (7th Cir.1989).

3. The district court began this inquiry, but seems to have abandoned it upon reaching the *Dudley* claim. Memorandum and Order at 11–12, 23–24.