In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-1318

JOSEPH E. CORCORAN,

*Petitioner-Appellant*,

*v.*

RON NEAL, Superintendent,[*]

*Respondent-Appellee*.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:05-CV-389 JD — **Jon E. DeGuilio**, *Judge*.

ARGUED NOVEMBER 5, 2013 — DECIDED APRIL 14, 2015

Before BAUER, WILLIAMS, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. In 1997 Joseph Corcoran shot and killed four men at his home in Fort Wayne, Indiana. A jury

[*] Pursuant to Federal Rule of Appellate Procedure 43(c), we have substituted Ron Neal, Superintendent, for Bill Wilson as the named respondent.

convicted him of four counts of murder and recommended the death penalty. The trial judge agreed and imposed a death sentence in accordance with the jury's recommendation.

After his appeals in state court had run their course, Corcoran sought federal habeas relief on multiple grounds. We resolved some of his claims in earlier opinions and Corcoran has abandoned others; only two issues remain. Corcoran argues that the trial judge impermissibly relied on nonstatutory aggravating factors and failed to consider mitigating evidence when deciding whether to impose the death penalty. In a thorough opinion, the district court rejected these claims and denied the writ.

We affirm. First, the Indiana Supreme Court held that the trial judge did *not* in fact rely on nonstatutory aggravating factors. We previously disagreed with that determination, but our earlier decision—now vacated—did not adequately grapple with the deference owed to state-court factual findings under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d)(2). Giving the matter a fresh look through the lens of AEDPA's deferential standard of review, we now conclude that the state supreme court's factual determination was not unreasonable.

Second, the Indiana Supreme Court reasonably determined that the trial judge considered all proffered evidence in mitigation. The sentencer's obligation to consider mitigating evidence in a capital case does not require that the evidence be credited or given any particular weight in the final sentencing decision.

## I. Background

This case has a long and complex history in state and federal court, most of which is not relevant here and can be found in our earlier opinions. *See Corcoran v. Wilson* ("*Corcoran XI*"), 651 F.3d 611 (7th Cir. 2011); *Corcoran v. Levenhagen* ("*Corcoran IX*"), 593 F.3d 547 (7th Cir. 2010); and *Corcoran v. Buss* ("*Corcoran VII*"), 551 F.3d 703 (7th Cir. 2008). We will repeat the facts and procedural history only as necessary to resolve the remaining claims.

On the evening of July 26, 1997, Corcoran was in his bedroom in the Fort Wayne home he shared with his sister when he heard men talking downstairs and became angry because he thought they were talking about him. He loaded his rifle and went downstairs to confront them. In the living room, he found his brother Jim Corcoran; their sister's fiancé, Scott Turner; and two of Jim's friends, Timothy Bricker and Doug Stillwell. Corcoran shot the first three men at close range, killing them. Stillwell tried to escape, but Corcoran chased him into the kitchen and killed him too with a shot to the back of the head.

Corcoran was charged in state court with four counts of murder. Indiana sought the death penalty based on the statutory aggravating circumstance of multiple murders. *See* IND. CODE § 35-50-2-9(b)(7)–(8) (1997).[1]

---

[1] Our citations are to the version of the statute in effect in 1997. *See Jacobs v. State*, 835 N.E.2d 485, 491 n.7 (Ind. 2005) ("[W]e reaffirm our commitment to the general rule that 'courts must sentence defendants under the statute

(continued...)

Under Indiana's death-penalty statute, if the defendant is found guilty, the jury hears evidence in the penalty phase of trial and can recommend "the death penalty, or life imprisonment without parole, or neither." *Id.* § 35-50-2-9(e). Before recommending death, the jury must find two things: (1) the prosecution has proved beyond a reasonable doubt one or more of the aggravating circumstances listed in the statute; and (2) "any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances." *Id.* § 35-50-2-9(k)(2). At the time of these crimes, the jury's weighing of the aggravating and mitigating circumstances was not binding on the trial judge; the statute then in effect provided that "[t]he court shall make the final determination of the sentence, after considering the jury's recommendation, and the sentence shall be based on the same standards that the jury was required to consider." § 35-50-2-9(e).[2]

So in 1997 (as now) the statutory aggravating factors serve to limit the sentencer's initial determination of death eligibility *and* the weighing process that determines whether the death penalty is imposed. *See Corcoran v. State* ("*Corcoran I*"), 739 N.E.2d 649, 655 (Ind. 2000). This makes Indiana a so-called

---

[1] (...continued)
in effect at the time the defendant committed the offense.'" (quoting *Payne v. State*, 688 N.E.2d 164, 165 (Ind. 1997))).

[2] After *Ring v. Arizona*, 536 U.S. 584 (2002), Indiana amended its death-penalty statute to make the jury's decision final. *See Ritchie v. State*, 809 N.E.2d 258, 263 n.1 (Ind. 2004). The amended statute provides that "[i]f the jury reaches a sentencing recommendation, the court shall sentence the defendant accordingly." IND. CODE § 35-50-2-9(e) (2002).

"weighing" state. *See Brown v. Sanders*, 546 U.S. 212, 217 (2006) ("We identified as [weighing states] those in which the only aggravating factors permitted to be considered by the sentencer were the specified eligibility factors."); *Hough v. Anderson*, 272 F.3d 878, 904–05 (7th Cir. 2001) (describing the difference between weighing and nonweighing states).

The jury found Corcoran guilty and recommended the death penalty. The trial judge agreed and imposed a death sentence, announcing her findings both orally and in a written sentencing order. Combining the judge's oral and written statements, the court made the following findings.

First, the judge assigned "high weight" to the multiple murders as aggravating circumstances. She then addressed the ten mitigating circumstances Corcoran's counsel had proposed, ultimately rejecting six and finding four proven.

More specifically, the judge found that the following circumstances were proven and deserved weight as mitigators: (1) Corcoran was under the influence of a mental or emotional disturbance at the time of the crimes (a personality disorder, though the experts did not agree about how to classify it); (2) Corcoran cooperated with the authorities during the investigation; (3) he had a limited criminal history; and (4) he was genuinely remorseful for the crimes. The judge gave the first of these factors "medium weight." The other three, she said, deserved only "low weight."

The judge rejected the other mitigating factors proffered by the defense. Two related to Corcoran's mental capacity. Counsel argued that Corcoran's mental disorder impaired his ability to appreciate the criminality of his conduct, thus

diminishing his culpability. The judge rejected this argument based largely on the testimony of several doctors who examined Corcoran for competency and also for a possible insanity defense. The judge characterized the expert evidence as "ambiguous" because the doctors could not agree on how to diagnose Corcoran's personality disorder. She also noted that Corcoran had called the police after the murders and kept his young niece away from the crime scene (she was in the home at the time of the crimes). The judge thought these actions demonstrated that Corcoran knew right from wrong and did not deserve mitigation credit for reduced culpability due to mental disease or defect.

For similar reasons, the judge was also unpersuaded by Corcoran's argument that his ability to competently assist in his own defense was compromised by mental illness. This argument focused on the fact that he had rejected a favorable plea bargain. The judge emphasized that Corcoran was assisted by capable counsel and had competently chosen to exercise his right to a trial.

The judge then considered and quickly rejected the remaining mitigators proposed by the defense. Counsel argued that Corcoran had continually admitted his guilt through all stages of the legal process. That was not true; Corcoran stood on his pleas of not guilty and went to trial. Counsel also argued that Corcoran deserved mitigation credit for behaving well in jail. The judge disagreed, noting that Corcoran had two conduct reports, and besides, good behavior is expected of prisoners. Counsel argued that Corcoran's act of shielding his niece from the trauma of seeing four dead bodies deserved weight as a

mitigating factor. The judge was not persuaded that keeping the girl away from the gruesome crime scene was evidence of good character. Finally, counsel urged the court to treat Corcoran's age at the time of the murders (he was 22) as a mitigating factor. The judge summarily rejected this argument, saying, "I don't consider your age of 22 to be a mitigating circumstance."

The judge then weighed the proven aggravating and mitigating circumstances and found that the former out-weighed the latter. As relevant here, the judge made the followings remarks in her oral sentencing statement:

> I'm required to balance aggravating circum-stances proved by the State of Indiana against the mitigating circumstances proved by the Defense. That has been a very difficult process, and not a process that I have ever taken lightly, and certainly would never take lightly, Mr. Corcoran.

> … [T]he knowing and intentional murders of four innocent people is an extremely heinous and aggravated crime. That makes you, Mr. Corcoran, a mass murderer. [The prosecutor] is right. I don't think in the history of this county we've had a mass murderer such as yourself. It makes you, Mr. Corcoran, a very dangerous, evil mass murderer. And I am convinced in my heart of hearts, Mr. Corcoran, if given the opportunity, you will murder again.

In her written order, the judge also stated that the knowing and intentional killing of four "innocent victims" is a "particularly heinous" crime.

Based on these remarks, Corcoran argued on direct appeal that the judge impermissibly relied on "future dangerousness"—a nonstatutory aggravating factor—in deciding whether to impose the death penalty. *Corcoran I*, 739 N.E.2d at 657. The Indiana Supreme Court credited this argument and remanded the case, explaining that the sentencing court "must limit its consideration of aggravating circumstances to those specified in the death penalty statute." *Id.* at 655 (citing *Bivins v. State*, 642 N.E.2d 928, 955 (Ind. 1994); § 35-50-2-9(b)). The court also noted, however, that Indiana law permits the judge to consider the circumstances of the crime as context for the balancing process, *id.* at 657, and as part of the judge's "personal conclusion" that death is the "appropriate punishment for this offender and this crime," a required step in Indiana capital cases, *id.* at 655.

Importantly here, the state high court acknowledged that it's sometimes difficult to distinguish between permissible consideration of context and impermissible consideration of nonstatutory aggravating circumstances:

> Because the circumstances of a crime often provide "an appropriate context for consideration of the alleged aggravating and mitigating circumstances," … reference to the nature and circumstances of the crime in the sentencing statement "does not necessarily compel a conclusion that such matters were improperly consid-

> ered and weighed as aggravating circum-
> stances."

*Id.* at 657 (quoting *Prowell v. State*, 687 N.E.2d 563, 567 (Ind. 1997)). In the end, however, the court concluded that the trial judge's reference to Corcoran's future dangerousness—and also her remarks about the innocence of the victims and the heinousness of the crimes—raised "a significant possibility that [she] may have relied upon non-statutory aggravating factors in deciding whether to impose the death penalty." *Id.* Accordingly, the court sent the case back to the trial court with instructions to redetermine "whether to impose the death sentence, life without parole, or a term of years" and to "issue a new sentencing statement." *Id.*

On remand the judge again assigned the multiple-murders "high weight" as statutory aggravating circumstances. Without revisiting her prior findings on the mitigation evidence, the judge again concluded that the aggravating circumstances outweighed the proven mitigating circumstances. Then, specifically addressing the reason for the remand, the judge wrote this:

> The trial [c]ourt, in balancing the proved aggra-
> vators and mitigators, emphasizes to the
> Supreme Court that it only relied upon those
> proven statutory aggravators. The trial [c]ourt's
> remarks at the sentencing hearing, and the
> language in the original sentencing order explain
> why such high weight was given to the statutory
> aggravator of multiple murder, and further
> support the trial [c]ourt's personal conclusion

> that the sentence is appropriate punishment for
> this offender and these crimes.

With that, the judge reimposed the death penalty, and the case returned to the Indiana Supreme Court.

This time around the court held that the death sentence complied with Indiana law:

> We are now satisfied that the trial court has relied on only aggravators listed in Indiana Code § 35-50-2-9(b). In response to our remand, the trial court stated, "[I]n balancing the proved aggravators and mitigators, [the trial court] emphasizes to the Supreme Court that it only relied upon those proven statutory aggravators." There is no lack of clarity in this statement and no plausible reason to believe it untrue.

*Corcoran v. State* ("*Corcoran II*"), 774 N.E.2d 495, 499 (Ind. 2002) (internal citation omitted) (alterations in the original).

Corcoran had also challenged the judge's decision not to reconsider her earlier mitigation findings on remand. The Indiana Supreme Court found no error and at length reviewed and approved the trial judge's evaluation of the mitigation evidence in the original sentencing proceeding:

> Corcoran's argument that the trial court did not consider six of the proffered mitigating circumstances is without merit. As the mitigating circumstances were not the focus of our concern, we are not surprised that the trial court's second order analyzed only those aggravating and

mitigating circumstances it found pertinent to the task on remand.

The trial judge had in fact analyzed Corcoran's proffered mitigators in the course of its original sentencing. Our review of the record also persuades us that the trial court properly rejected the remaining factors in the original sentencing order. Corcoran claimed first that his mental disease affected his capacity to appreciate or conform his conduct. As we discuss in greater detail below, the trial court did not err in rejecting it.

In a related vein, Corcoran also asked the court to consider the fact that he shielded his young niece from the bloodshed as a mitigator. But this fact cuts both ways. His actions demonstrate a keen awareness of the events that were to follow, and suggest to us that his capacity to appreciate the criminality of his conduct was not inhibited.

Third, Corcoran argues that his mental disease prevented him from competently assisting in his defense, stemming primarily from his refusal of favorable plea recommendations offered by the State. The State's pleas would have kept Corcoran in jail for life, but Corcoran rejected each. He chose instead to exercise his constitutional right to a jury trial, therefore creating the potential for a lesser sentence, a

favorable jury recommendation, or an outright acquittal. Corcoran's choice will not act simultaneously as a mitigator for his benefit.

The remaining three factors are also without merit. Corcoran was twenty-two at the time of the murders, and offered his age as a mitigator. Although chronological age is not the end of the inquiry for young adults, considering both the seriousness of this crime and the fact that Corcoran is well past the age of sixteen where the law requires special treatment, we find no abuse of discretion. The fifth rejected factor was Corcoran's good behavior in jail prior to sentencing. We agree with the trial court that this is expected of persons who are incarcerated. Even if it is an appropriate mitigator, its weight is modest and we find no abuse of discretion here either. Finally, Corcoran asserted that his admission of guilt through all phases of the legal process should be a mitigating circumstance. Of course, Corcoran did not admit his guilt in the sense that one does in pleading guilty. Corcoran demanded a jury trial and subjected the victims' families and loved ones to a trial. The trial court did not abuse its discretion in declining to find this mitigator.

… [T]he trial court explicitly identified the proven mitigating circumstances and listed the specific facts and reasons that led the court to find

> their existence. The trial court fulfilled its
> resentencing duties.

*Corcoran II*, 774 N.E.2d at 500–01 (citations omitted). Finally, the court considered and rejected Corcoran's argument that the death penalty was manifestly unreasonable. *Id.* at 501–02. The court was satisfied that the "quadruple killing" outweighed the proven mitigators and thus affirmed the sentence. *Id.*

Protracted postconviction proceedings followed.[3] After exhausting state remedies, Corcoran applied to the federal court in Northern Indiana for a writ of habeas corpus, raising eight separate claims. There's no need to retrace them all here. It's enough to say that the case has been before the district court twice, before this court three times (this is the fourth), and before the Supreme Court twice.[4] The parties now agree that only two claims remain: Corcoran argues that the trial judge impermissibly considered nonstatutory aggravating factors and failed or refused to consider his proffered evidence in mitigation. The district court rejected both claims and denied the writ.

---

[3] See *Corcoran v. State*, 845 N.E.2d 1019 (Ind. 2006); *Corcoran v. State*, 827 N.E.2d 542 (Ind. 2005); and *Corcoran v. State*, 820 N.E.2d 655 (Ind. 2005).

[4] In reverse chronological order, the opinions and orders can be found at *Corcoran v. Buss*, No. 3:05-CV-389 JD, 2013 WL 140378 (N.D. Ind. Jan. 10, 2013); *Corcoran v. Wilson*, 651 F.3d 611 (7th Cir. 2011); *Wilson v. Corcoran*, 562 U.S. 1 (2010); *Corcoran v. Levenhagen*, 593 F.3d 547 (7th Cir. 2010); *Corcoran v. Levenhagen*, 558 U.S. 1 (2009); *Corcoran v. Buss*, 551 F.3d 703 (7th Cir. 2008); and *Corcoran v. Buss*, 483 F. Supp. 2d 709 (N.D. Ind. 2007).

## II. Discussion

A federal court may grant a state prisoner's application for a writ of habeas corpus only if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Wilson v. Corcoran* ("*Corcoran X*"), 562 U.S. 1, 1 (2010) ("Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law.").

Federal collateral review of state criminal judgments is "highly deferential." *See McManus v. Neal*, No. 12-2001, 2015 WL 667466, at *12 (7th Cir. Feb. 17, 2015). Under AEDPA a federal court may grant a state prisoner's application for habeas corpus only when the state-court proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding," *id.* § 2254(d)(2).

This standard is "'difficult to meet.'" *White v. Woodall*, 134 S. Ct. 1697, 1702 (quoting *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013)). "Unreasonable" in this context means more than just incorrect; it "'means something like lying well outside the boundaries of permissible differences of opinion.'" *West v. Symdon*, 689 F.3d 749, 751 (7th Cir. 2012) (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)). Stated differently, an unreasonable application of federal law is not merely wrong but "objectively unreasonable"; "even 'clear error' will not suffice." *White*, 134 S. Ct. at 1702. "Clearly established federal

law" for purposes of § 2254(d)(1) means "only the *holdings*, as opposed to the dicta, of [the Supreme] Court's decisions." *Id.* (emphasis added) (internal quotation marks and citation omitted).

The deference owed to state criminal judgments extends just as strongly—perhaps more so—to the state court's factual findings. A state court's factual determinations are cloaked with a presumption of correctness on federal habeas review, and the prisoner has the burden to rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Kidd v. Lemke*, 734 F.3d 696, 703 (7th Cir. 2013). "[A] state court's decision is factually unreasonable only when it 'rests upon fact-finding that ignores the clear and convincing weight of the evidence.'" *McManus*, 2015 WL 667466, at \*12 (quoting *Goudy v. Basinger*, 604 F.3d 392, 399 (7th Cir. 2010)).

If the prisoner carries this burden and shows that the state court's decision was legally or factually unreasonable, the federal court reviews the prisoner's claim of constitutional error de novo. *Id.*

We review the district court's denial of the writ de novo. *Ruhl v. Hardy*, 743 F.3d 1083, 1090 (7th Cir. 2014).

\*   \*   \*

Corcoran challenges two aspects of the Indiana Supreme Court's decision in *Corcoran II*: (1) the court's determination that the trial judge did not rely on nonstatutory aggravating factors in her resentencing order, *see* 774 N.E.2d at 499; and (2) the court's determination that the judge did not refuse or fail to consider the proffered evidence in mitigation, *id.* at 500–

01. These are factual findings. *See Parker v. Dugger*, 498 U.S. 308, 320 (1991) (explaining that a state court's characterization of what the trial judge found is a finding of historical fact). Accordingly, Corcoran has the heavy burden to overcome the presumption of correctness and show that the state court's fact-finding is unreasonable. He has not carried that burden.

### A. Nonstatutory Aggravating Circumstances

Following the remand in *Corcoran I*, the trial judge issued a new sentencing order and unambiguously stated that she relied *only* on proven statutory aggravators (the multiple murders) in weighing the aggravating and mitigating circumstances. She also explained that her remarks at the original sentencing proceeding about the circumstances of the crimes—the comments that troubled the supreme court and led to the remand—were offered to explain the "high weight" she assigned to the statutory aggravators and to support her "personal conclusion that the sentence is appropriate punishment for this offender and these crimes."

The Indiana Supreme Court accepted this explanation and pronounced itself "satisfied that the trial court has relied on only aggravators listed in Indiana Code § 35-50-2-9(b)." *Corcoran II*, 774 N.E.2d at 499. As we've noted, that's a factual finding, so we must presume it to be correct, and Corcoran has the burden to rebut it by clear and convincing evidence.

Corcoran has not identified any *evidence* to rebut the presumption, though to be fair this is not the kind of factual finding that can be rebutted in the traditional sense by pointing

to witness testimony and exhibits in the record. The question before the state supreme court in *Corcoran II* did not require the resolution of an evidentiary conflict. Instead, the court was faced with a choice to either accept or reject the judge's assurance that she did not rely on nonstatutory aggravators. The court accepted it. The question for us is whether that decision was unreasonable—whether it ignores the clear weight of the evidence or lies outside the boundaries of fair-minded disagreement.

To put this inquiry in proper context, it's helpful to retrace the court's remand instructions in *Corcoran I*. First, the state high court reminded the trial judge that she must "limit [her] consideration of aggravating circumstances to those specified in the death penalty statute." *Corcoran I*, 739 N.E.2d at 655. The court also explained, however, that Indiana law permits the sentencing judge to consider the circumstances of the crime as context for the balancing process, *id.* at 657, and to amplify her "personal conclusion that the sentence is appropriate punishment for this offender and this crime," *id.* at 655 (citing *Harrison v. State*, 644 N.E.2d 1243, 1262 (Ind. 1995)). The judge's duty to explain why the sentence is "appropriate punishment for this offender and this crime" implies an obligation to reflect and comment on the specific characteristics of the offense and the offender in arriving at that conclusion.

So under state law the statutory aggravating factors "channel[] and limit … the sentencer's discretion" in important ways, *Maynard v. Cartwright*, 486 U.S. 356, 362 (1988), but capital sentencing does not take place in a factual straightjacket. The trial judge commits error if she treats nonstatutory

aggravating factors as formal aggravators. *Corcoran I*, 739 N.E.2d at 657 (explaining that the reviewing court looks to "the role of non-statutory aggravating matters" in the judge's sentencing statement). But the judge may properly refer to background facts as context for the balancing process and to explain the judge's "personal conclusion" that the death penalty is appropriate punishment in light of the nature of the offense and the character of the offender. *Id.* at 655, 657.

With the benefit of these remand instructions, the trial judge stated in her resentencing order that she relied *only* on "proven statutory aggravators"—that is, the multiple murders—in weighing the aggravating and mitigating circumstances. She also explained that her remarks at the original sentencing (the ones that led to the remand) were intended only as explanatory context for the "high weight" she assigned to the multiple murders as statutory aggravators and to support her personal conclusion that the death penalty was appropriate punishment.

The Indiana Supreme Court took the judge at her word and found that she "relied on only aggravators listed in Indiana Code § 35-50-2-9(b)." *Corcoran II*, 774 N.E.2d at 499. Corcoran challenges that finding as unreasonable. His argument rests almost entirely on our now-vacated opinion in *Corcoran IX*. There we said that "unlike the Indiana Supreme Court, we are far from 'satisfied that the trial court has relied only on aggravators listed in Indiana Code § 35-50-2-9(b).'" *Corcoran IX*, 593 F.3d at 551. We construed the trial judge's comments as "add[ing] weight to a statutory aggravator based on the non-statutory aggravators" and noted that "factor

weighting is part of factor 'balancing,' the very process in which the trial court disclaimed reliance only on aggravators listed in [the statute]." *Id.*

Corcoran argues that we "got it right" in *Corcoran IX* and urges us to stick with our earlier interpretation of the judge's resentencing statement. But our interpretation is not the *only* reasonable way to read this record. The state supreme court was entitled to see things differently as long as its decision did not ignore the clear weight of the evidence and falls within the boundaries of fair-minded disagreement. *White*, 134 S. Ct. at 1702.

Having revisited the matter, we now acknowledge that our decision in *Corcoran IX* did not hew as closely as it should have to the deferential standard of review mandated by AEDPA. Although we found the state supreme court's decision "unreasonable," in doing so we did not give the state court's decision the deference it was due. Line-drawing in this area can be difficult, as the Indiana justices emphasized in *Corcoran I*. 739 N.E.2d at 657. There's room for reasonable disagreement about how to interpret this record. The state high court credited the judge's statement that she followed the law, and under AEDPA that decision is entitled to substantial deference. We cannot say that the state supreme court either ignored the clear weight of the evidence or reached a decision that no fair-minded jurist could reach. In short, the state court's decision was not unreasonable.

**B. Mitigating Circumstances**

Corcoran's final argument is that the judge's analysis of his proffered mitigating evidence violated the rule of *Eddings v. Oklahoma*, 455 U.S. 104 (1982). In *Eddings* a capital defendant presented mitigation evidence that as a child he had been physically abused by his father. *Id.* at 107. The sentencing judge rejected this evidence as a matter of law: "Nor can the [c]ourt in following the law, in my opinion, consider the fact of this young man's violent background." *Id.* at 109 (quotation marks omitted). The Supreme Court reversed and remanded, holding that the sentencing court in a capital case must admit and consider all relevant mitigating evidence. "Just as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence." *Id.* at 113–14; *see also Skipper v. South Carolina*, 476 U.S. 1, 4 (1986) ("[T]he sentencer may not refuse to consider or be precluded from considering any relevant mitigating evidence." (internal quotation marks omitted)); *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) ("[W]e conclude that the Eighth and Fourteenth Amendments require that the sentencer … not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.").

Corcoran argues that the judge violated *Eddings* by refusing to consider two of his proffered mitigators: (1) his age at the

time of the murders; and (2) his good behavior while in prison.[5] But the judge *did* consider these two proposed mitigators, if only summarily. In her oral statement at sentencing, the judge specifically stated that she did not believe Corcoran's age of 22 was a mitigating circumstance. She spent a bit more time on Corcoran's claim about his good behavior in jail. At the sentencing hearing, she noted that "there are two reports from the police department in this file, from the jail, that don't exactly indicate your good behavior." She added the following in her written sentencing order: "As good behavior is expected of incarcerated individuals, the [c]ourt does not consider this to be a mitigating circumstance."

Without specifically referring to *Eddings*, the Indiana Supreme Court considered Corcoran's argument and rejected it as "without merit." *Corcoran II*, 774 N.E.2d at 500. That conclusion was not unreasonable. Here, unlike in *Eddings*, the judge's oral and written statements do not suggest that she thought she was foreclosed from considering the two proposed mitigators *as a matter of law*. To the contrary, the judge admitted Corcoran's evidence, discussed his claims, and said she did not agree that his age or good behavior in jail were mitigating circumstances. Regarding the good-behavior claim in particu-

---

[5] Corcoran also argues that the trial judge erred by not reconsidering all of his proposed mitigators on remand. The Indiana Supreme Court rejected this argument as a matter of state law. *Corcoran v. State* ("*Corcoran II*"), 774 N.E.2d 495, 500 (Ind. 2002). We know of no principle of federal constitutional law that prohibited the judge from relying on her earlier findings.

lar, she also pointed out that the evidence did not run in Corcoran's favor in the first place.

We have previously explained that "[t]he rule of *Eddings* is that a sentencing court may not exclude relevant mitigating evidence[,] [b]ut of course, a court may choose to give mitigating evidence little or no weight." *Allen v. Buss*, 558 F.3d 657, 667 (7th Cir. 2009) (citation omitted); *see also Baird v. Davis*, 388 F.3d 1110, 1114 (7th Cir. 2004) ("[The Supreme Court] has made clear that a sentencing court in balancing aggravating and mitigating circumstances bearing on the imposition of the death penalty is not required to give any fixed weight to any particular mitigating circumstance."). In other words, the sentencer's obligation to consider all mitigating evidence in a capital case does not imply a duty to credit the evidence or give it weight in the final analysis.

Corcoran relies on *Wright v. Walls*. 288 F.3d 937 (7th Cir. 2002), but that case is distinguishable on several fronts. In *Wright* the trial judge's remarks at sentencing were "strikingly similar to those in *Eddings*." *Id.* at 943. Here, in contrast, the trial judge made no categorical statements of exclusion. Moreover, *Wright* was decided under the less deferential "pre-AEDPA" standard of review. *See id.* at 941–42.

Our more recent decision in *Allen v. Buss* provides better guidance. 558 F.3d at 667. In *Allen* the trial judge heard evidence of the defendant's traumatic and dysfunctional childhood but did not mention it in his written sentencing order. *Id.* at 665–66. After reviewing several other proffered mitigators, the judge's order simply stated that "[the court] finds no other circumstances appropriate for consideration as

a mitigating factor." *Id.* at 666. On appeal the defendant argued that the judge ignored the evidence of his difficult childhood. The Indiana Supreme Court disagreed, holding that the judge "had properly considered his mitigating evidence," and further noting that "'[a]ccepting the facts alleged about Allen's childhood does not compel a finding of mitigating circumstances.'" *Id.* (quoting *Allen v. State*, 686 N.E.2d 760, 790 (Ind. 1997)).

We deferred to the state court's decision, finding it a "plausible" interpretation of the judge's sentencing order. *Id.* at 667. We can go further in this case; here the judge was not silent on the subjects of Corcoran's age and behavior in jail. She clearly addressed both factors and simply declined to credit them as mitigating circumstances. The Indiana Supreme Court reasonably concluded that this satisfied the judge's obligation to consider Corcoran's proffered evidence in mitigation.

### III. Conclusion

For the foregoing reasons, the judgment of the district court denying Corcoran's petition for habeas relief is AFFIRMED.